## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ZORA DUGAN,

          Plaintiff,

    v.

MIROSLAV VLCKO,

          Defendant.

Case No. 16-13252
Hon. Terrence G. Berg

## OPINION AND ORDER DENYING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT (Dkt. 27) AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART (Dkt. 19)

### I.  Introduction

This is a dispute between siblings about money owed from a failed real estate investment. Plaintiff Zora Dugan claims that her brother, Defendant Miroslav Vlcko, breached a contract with her by not paying her back on a promissory note. Plaintiff moved for summary judgment. Dkt. 19.  Defendant failed to respond until the Court entered a text only order instructing him to do so.  Defendant then he filed a consolidated response and cross motion for summary judgment. Dkt. 27.

For the reasons set out below, Defendant's Cross Motion for Summary Judgment will be DENIED, and Plaintiff's Motion for Summary Judgment will be GRANTED in part.

## II. Background

In October 2007, Plaintiff invested approximately $150,000 in WV Investments LLC, a real estate venture majority-owned and managed by her brother. Dkt. 11 at Pg ID 89. The money was for a shopping center to be located in the greater D.C. area. From the record, it does not appear that anything memorialized this investment in writing. Nonetheless, Plaintiff received monthly disbursements as returns on this investment from October 2007 through June 2012. Dkt. 11 at Pg ID 89.

On or around September 29, 2011 Defendant emailed Plaintiff to let her know that the shopping center was being sold, with an anticipated closing of February 1, 2012. Dkt. 11 at Pg ID 389; Dkt 11-1 at Pg ID 108. In that email he also stated "when the loan closes [Plaintiff] will receive the unpaid portion of [her] original contribution, and [her] percentage of the net sale proceeds" after the closing costs and expenses were deducted. Dkt. 11-1 at Pg ID 108.

Plaintiff continued receiving monthly disbursements until June 2012. But she did not receive a check for her original investment or any percentage of the net sale proceeds. Dkt. 11 at Pg ID 90. Plaintiff made repeated requests to Defendant during July and August 2012 for a return of her principal investment, but Defendant told her he did not have the money. Dkt. 11 at Pg ID 90.

On September 24, 2012 Defendant emailed Plaintiff and stated "My records show that you're owed $80,377.00 return on your original investment, and $116,039.44 as a return on percentage interest, for a total of $186,416.44." Dkt. 11-2 at Pg ID 110. In that same email Defendant told her he would make her the same "deal" he had extended to another investor in the property—"50% interest on your money from 9/1/12 until you get paid"—if she would agree not to collect this debt and allow him to use the funds in a new investment: a return of 50% interest on the outstanding amount from September 1, 2012 until she got paid. Dkt. 11-2 at Pg ID 110.

Plaintiff responded on September 25, 2012 to clarify the terms of the loan. Dkt. 11-2 at Pg ID 110. In his same-day responses to her questions Defendant told her 1) the 50% interest rate would be for each year of the loan; 2) the life of the loan would be until Defendant and his LLC could recoup "the $8,000,000 cash I have in the projects," and likely by year-end; 3) the loan would be to WV Urban Developments guaranteed by Defendant and Richard Walker (Defendant's partner in the LLC). Dkt. 11-2 at Pg ID 110. According to Plaintiff, Defendant advised her that he would execute a Promissory Note containing the agreed upon terms. Dkt. 11 at Pg ID 91.

After this email exchange, however, Defendant failed to send Plaintiff a Promissory Note for the loan. Dkt. 11 at Pg ID 91. Finally, after several requests from Plaintiff, Defendant emailed the

Note to Plaintiff on June 20, 2013. Dkt. 11-3 at Pg ID 112. Signed by Defendant and Richard Walker[1], the Note guaranteed payment of $194,288.92 annually to Plaintiff, representing a 20% return on the loan amount. It was effective as of December 12, 2012, personally guaranteed by Defendant and Walker, and payable on demand. Dkt. 1-4 at Pg ID 21.

Upon seeing that the Note contained a 20% interest term instead of the 50% that she and Defendant had previously discussed, and that it was effective as of December 2012 rather than September 2012, Plaintiff emailed Defendant on June 24, 2013 and asked him to send her "a new note" with the 50% interest term and a September 1, 2012 effective date. Dkt. 11-5 at Pg ID 117. Defendant replied the same day and told her he could not include a 50% interest term in the Note because it was criminal usury and that they would "talk." *Id.*

According to Plaintiff's deposition testimony she and Defendant spoke on the phone shortly after this email exchange and he reiterated that 50% interest was usurious which was why he had included a 20% term instead. Dkt. 27-1 at Pg ID 363, 79:18-81:12. She testified that she understood this to mean that 20% was non-

---

[1] Defendant initially filed a Third Party Complaint against Richard Walker. Dkt. 14. The parties ultimately entered into a consent judgment under which Walker agreed to indemnify Vlcko for 50% of any judgment entered against Vlcko in this action. Dkt. 17.

usurious and thus enforceable and that she agreed to the loan under those terms. *Id*. Defendant does not dispute that this phone conversation occurred or what was discussed during it.

No interest payments were made on the Note. Plaintiff claims she made her first demand for payment on the Note over the phone in late 2013, and made several subsequent demands throughout 2014. Dkt. 11 at Pg ID 92. Plaintiff states that Defendant responded by indicating that all of the funds she had lent had been used by WV Urban Investments LLC on options to purchase real property, but that those investments had fallen through and she was out of luck. *Id*. Defendant does not appear to dispute this account.

In Spring 2015 Plaintiff received an income tax form from Defendant for WV Urban Investments LLC known as a K-1 form. A K-1 form reports income or losses from a partnership.[2] This form named Plaintiff as a partner in WV Urban Investments LLC,

---

[2] Each partner in a partnership files an individual tax return that reports his/her share of the following items included on the businesses' 1065 form: income, losses, credits, and deductions. The partnership then prepares a K-1 to report all of this information and each partner's share of the taxes and are submitted to the IRS along with the partnership's tax return. *See* Internal Revenue Service, About Form 1065, U.S. Return of Partnership Income, https://www.irs.gov/forms-pubs/about-form-1065-us-return-of-partnership-income (last accessed March 29, 2018); Internal Revenue Service, About Schedule K-1 (Form 1065), Partner's Share of Income, Deductions, Credits, etc., https://www.irs.gov/forms-pubs/about-schedule-k1-form-1065 (last accessed March 29, 2018).

though she claims she never joined the partnership. The K-1 form showed an "ordinary business income loss" of $193,320. Dkt. 11 at Pg ID 92; Dkt. 11-7 at Pg ID 124 (2014 K-1 for WV Urban Investments LLC). Plaintiff claims Defendant told her to write off the loss on her taxes, which she did not do. Dkt. 11 at Pg ID 92.

On June 3, 2016 Plaintiff made her final demand for payment on the Promissory Note in writing. Dkt. 11 at Pg ID 92; Dkt. 11-8 at Pg ID 129-30 (demand letter from Plaintiff's lawyer). In that letter Plaintiff request a payment of $330,938.79, which she calculated as her principal investment ($194,288.93) plus the 20% per year interest ($136,649.87) over the course of three years.

Defendant did not respond to that letter, and has made no payments on the Note.

Plaintiff filed this suit on September 9, 2016. Dkt. 1. In her Amended Complaint, filed November 28, 2016, she claimed: 1) default on promissory note; 2) breach of contract; 3) unjust enrichment; 4) fraudulent misrepresentation; 5) silent fraud; 6) bad faith promise; 7) negligent misrepresentation; and 8) innocent misrepresentation. Dkt. 11.

Defendant meanwhile filed a Third-Party Complaint against Richard Walker, his partner in WV Investments LLC and the other personal guarantor of Plaintiff's Promissory Note on November 21, 2016. Dkt. 9. The two Defendants entered into a Consent Judgment

on January 25, 2017 under which Third-Party Defendant Walker agreed to indemnify Defendant Vlcko for 50% of any judgment Plaintiff won against Defendant Vlcko plus 50% of Defendant Vlcko's costs in defending against this action. Dkt. 17.

Plaintiff moved for summary judgment on April 4, 2017. Dkt. 240. When Defendant failed to respond, the Court issued a text only order on September 6, 2017 ordering Defendant to respond by September 22, 2017. Defendant filed a Cross-Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment on September 22, 2017. Plaintiff responded on October 13, 2017, Dkt. 29, and Defendant replied on October 27, 2017. Dkt. 30.

A hearing on the cross motions for summary judgment was held on December 11, 2017.

## III.  Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

As the moving party, the Defendant has the initial burden to show that there is an absence of evidence to support Plaintiff's case. *Selby v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552

Because the Court is dealing with cross motions for summary judgment, it will evaluate each claim to determine 1) if a genuine dispute of material fact exists such that summary judgment should not be granted to either side, and 2) if no genuine dispute of material fact exists whether the undisputed facts as a matter of law decide the claim.

## IV.  Analysis

Plaintiff has made eight claims: 1) Default on Promissory Note; 2) Breach of Contract; 3) Unjust Enrichment/Quantum Meruit (as

an alternative to breach of contract theory); 4) Fraudulent Misrepresentation; 5) Silent Fraud; 6) Fraud Based on Bad-Faith Promise; 7) Negligent Misrepresentation; 8) Innocent Misrepresentation. For each cause of action Plaintiff has requested the same relief: a judgment against Defendant in the amount of $344,107.26—the amount she alleges she is owed under the terms of the promissory note.

### a. Default on Promissory Note/Breach of Contract

Plaintiff argues that Defendant is in default on the signed Promissory Note that he emailed to her on June 24, 2013, and has thus breached their contract.

Defendant argues that the Promissory Note is not enforceable because 1) there was no consideration exchanged for it and 2) Plaintiff is not the holder in due course of the Note. Finally the Defendant argues that even if the Note is enforceable, the 20% interest rate is usurious under Michigan law and may not be enforced.

### 1. The Promissory Note is a negotiable instrument under the UCC

In order to be a cognizable negotiable instrument under the UCC as adopted by Michigan, the Promissory Note:

- o a) must be payable to the bearer;
- o b) on demand or at a definite time, and

- c) must not contain an undertaking other than payment of money (i.e. it cannot impose any other additional conditions of performance for payment).

MCLA §440.3104(2).

Plaintiff's Promissory Note satisfies this definition because it is a) payable "to the order of Zora Dugan"; b) payable "in full at any time or in part from time to time"; and c) does not include any other additional requirement with which Plaintiff must comply in order to receive that promised payment on demand. Dkt. 1-4 at Pg ID 21.

Additionally the Note is "certain as to the sum paid"— $194,288.92 plus interest at 20% per annum—"and the time of payment"— it states "effective as of December 12, 2012." *First Nat Bank v. Carson*, 60 Mich 432, 436; 27 NW 589 (1886).

## 2. The Promissory note is supported by sufficient consideration

Defendant argues that because Plaintiff did not actually give Defendant any funds at the time that the Note was executed, it is unenforceable for lack of consideration. Dkt. 27 at Pg ID 323.

Defendant's argument cannot overcome the presumption of consideration that accompanies negotiable instruments like promissory notes. *In re Booth's Estate*, 326 Mich. 337, 343 (1949)(quoting C.L 1948 § 439.26) ("Every negotiable instrument is deemed prima

10

facie to have been issued for valuable consideration; and every person whose signature appears thereon to have become a party thereto for value").

Whether a negotiable instrument has been transferred for value and consideration is determined under MCL 440.3303, which states that "a negotiable instrument is issued or transferred for value if is issued of transferred as payment of, or as security for an antecedent claim against any person." MCL 440.3303(1)(c).

If an instrument is issued for value under 440.3303(1) has also been issued for consideration. MCL 440.3303(2).

Michigan courts have found that a promissory note "given in payment of a pre-existing debt" satisfies this 440.3303(1)(c) definition and is thus supported by valuable consideration." *See Wienhold v. Pearsall*, 2013 WL 3198129 at * 5 (Mich. App. June 25, 2013)(citing *Ann Arbor Constr Co. v. Glime Constr. Co.,* 369 Mich. 669 (1963)(finding that a promissory note for repayment of $105,000 wired to defendant's bank account was supported by adequate consideration as was a subsequent note issued when the first note was defaulted on).

Defendant does not dispute that it owed Plaintiff an antecedent debt based on original investment in the shopping center. And the email records attached to Plaintiff's Amended Complaint indicate Defendant communicated to her that she was owed this

money.  In a September 24, 2012 email to Plaintiff, the authenticity or validity of which Defendant does not dispute, Defendant wrote: "My records show that you're [Plaintiff] owed $80,377.00 return on your original investment, and $116,039.44 as a return on investment for a total of $196,416.44." *See* Dkt. 11-2 at Pg ID 110.

Defendant argues that the antecedent debt should not qualify as consideration here because Plaintiff's initial investment was to WV Investments LLC, and thus even though he personally guaranteed the loan for the amount owed to her for that investment, he did not personally receive the benefit of that loan. Dkt. 27 at Pg ID 324.

But even if the check for the initial investment—a copy of which was not made available in the record—was not made out personally to Defendant, he cannot argue that he did not receive the *benefit* of Plaintiff's original investment. Receipt of a benefit from this type of transaction is sufficient to constitute consideration for the Note flowing from Plaintiff to Defendant. *See Scott v. Zimmerman*, No. 296077, 2011 WL 1446100 at * 7 (Mich. App. Apr. 14, 2011). In *Scott* the Michigan Court of Appeals rejected defendant's argument that there was not adequate consideration for a loan she personally guaranteed repayment of because the money went to her company, and not to her personally. *Id.* at *6-7. The court found instead that because the defendant indicated on the record that she

considered herself a "75% owner" of the business she could not argue that there was no benefit to her from the investment, and thus held the money loaned to her business constituted valuable consideration. *Id.*

Defendant has not tried to argue that no *benefit* flowed to him as the named member manager and majority owner of WV Investments LLC when Plaintiff invested $150,000 in his business, even if the original check was not made out to him. In fact he has admitted that he was a "manager and majority owner of the LLC to which the initial investment was made." Dkt. 27-2 at Pg ID 388; *see also* Certificate of Amendment to the Articles of Organization for WV Investments LLC, May 19, 2011,https://cofs.lara.state.mi.us/CorpWeb/CorpSearch/CorpSearchFormList.aspx?SEARCH_TYPE=4.

Given the presumption of consideration that accompanies negotiable instruments and that, as discussed above Defendant did receive a benefit from Plaintiff's original investment, the Court finds the Note was for consideration and may be enforced. Defendant's Motion for Summary Judgment on this issue must therefore be denied and Plaintiff's Motion for Summary Judgment will be granted.

### 3. Holder in Due Course analysis is inapplicable, Plaintiff is the holder of the Note under the UCC

Defendant argues that even if the Note is supported by valuable consideration Plaintiff still cannot enforce it because she is not the holder in due course. Dkt. 27 at Pg ID 325.

Defendants abandon the holder in due course argument in their reply and argue instead that Plaintiff is not properly a holder of the Note at all because the Note was not issued and delivered to her. Dkt. 30 at Pg ID 432-35.

In support of this argument, Defendant points to Plaintiff's own testimony that she never possessed nor requested an *original* copy of the Promissory Note. Therefore, Defendant argues, she cannot now enforce it. Dkt. 27 at Pg ID 325. Defendant does not explain where the requirement that the possessed instrument be a "wet-ink" instrument comes from, nor does Defendant raise any argument about the authenticity of the emailed copy—or his signature on it—that Plaintiff has presented to the Court.

In supplemental briefing submitted to the Court after the summary judgment hearing, Defendant reiterated similar arguments. Defendant's line of reasoning goes that 1) Plaintiff is not the "Holder" of the promissory note as defined under §440.1201(2)(u) because she does not have "possession" of the original promissory note; and 2) Plaintiff does not have "possession" of the original

promissory note because it was neither "issued" by Defendant under MCL §440.3105, nor "delivered" to her by Defendant under MCL §440.1201(2)(0). Dkt 33 at Pg ID 443.

To satisfy the definition of a holder of an instrument a person must be either i) in possession of negotiable instrument that is payable either to the bearer or to an identified person that is the person in possession; ii) in possession of a negotiable tangible document or title if the goods are deliverable either to bearer or to the order of the person in possession, or iii) a person in control of a negotiable electronic document of title. MCL 440.1201(u)(i)-(iii).

Regarding Defendant's first argument that Plaintiff did not have "possession" of the Promissory Note because the Note was not "issued" by Defendant pursuant to MCL §440.3105: §440.3105(1) defines "issue" as the "first delivery of an instrument by the make or drawer, whether to a holder or non-holder, for the purpose of giving rights on the instrument to any person." Thus Defendant's argument turns on whether the "delivery" of the Promissory Note via email was sufficient under the definition of "delivery" in MCL §440.1201(2)(o), which reads:

"Delivery" means either of the following:

(i)     With respect to an electronic document of title, a voluntary transfer of control

(ii)    With respect to an instrument, document of title, or chattel paper, a voluntary transfer of possession

Under the plain reading of this definition, the key requirement for delivery of an instrument, like a promissory note, is the "voluntary transfer of possession." MCL §440.1201(o)(2). Defendant has made no argument here that he did not voluntarily submit the Promissory Note to Plaintiff when he sent a signed copy to her via email. Thus the email appears to satisfy the plain meaning of a "voluntary transfer of possession." Moreover, Defendant has not cited, nor has the Court found, any case law from this jurisdiction or Michigan state courts interpreting the delivery requirement to preclude this type of promissory note transfer. Defendant cites *Crawford v. JP Morgan Chase Bank, NA*, No. 08-CV-12634 (E.D. Mich. June 30, 2009) in which the court found that Plaintiff could not sue on a check that she had converted to a cashier's check thereby transferring her rights in that check to the bank that issued her a cashier's check. *Id.* at *3. *Crawford* is a secured transactions case in which plaintiff had exchanged an "original check" with the bank for a cashier's check, but still sought to enforce the original check several years later. *Id.* at *5. In that case the plaintiff did not possess the instrument she was seeking to enforce, which is not the factual circumstance here. The use of the word "original" to describe

check in *Crawford* was to distinguish it from the subsequent cashier's check, which was a different instrument issued by the bank to plaintiff. It was not meant as synonymous with *original* copy. Defendant also cites *Marks v. Braunstein*, 439 B.R. 248 (D. Mass. 2010), interpreting similar language under Massachusetts' version of the UCC, for the proposition that the delivery of the Promissory Note here was insufficient to render Plaintiff in possession of it.

But *Marks* does not even discuss sufficient versus insufficient delivery. It was a bankruptcy case in which the debtor had purchased an office condominium, executed a promissory note to a bank to cover part of the purchase price, and secured that note with a mortgage. *Marks*, 439 B.R. at 249. The debtor later assigned the promissory note and mortgage to his brother for additional consideration. *Id*. During the debtor's bankruptcy proceedings the condo was sold and purchased by the brother who attempted to have the amount owed to him under the promissory note credited toward that purchase. *Id*. Because he could not produce the promissory note, did not know where it was located, and who was in possession of it the court concluded he "did not meet the statutory requirement for enforcement of the Note," because he had not established he was ever in possession in the note. *Marks*, 439 B.R. at 250-51. In other words, the plaintiff in *Marks* had *no* basis for arguing possession

through delivery because he could not accurately state the note had ever been delivered by any means.

In addition to being non-binding authority from a different jurisdiction *Marks* also does not stand for the proposition Defendant is seeking in order to prevail: that email transmission of a promissory note does not satisfy the delivery requirement under Michigan's adoption of Article 3 of the UCC. *Marks*, 439 B.R. at 251. Nothing in *Marks*—nor in any other case from this jurisdiction that this Court or the parties could find—holds that electronic transmission of a promissory note fails to satisfy the delivery requirement.

Moreover, finding that Plaintiff is in possession of the Note here and allowing her to enforce it against Defendant does not undermine what the court in *Marks* noted was the "purpose of the possession requirement in Article 3 [of the UCC]": "to protect the Debtor from multiple enforcement claims to the same note." *Marks*, 439 B.R. at 251.

Defendant has thus failed to support his argument that Plaintiff's emailed copy of the Note, made out specifically to her, is insufficient to satisfy the statutory requirement of possession under MCL §440.3105. No one has challenged the authenticity of the electronic copy of the Note, nor the existence of the obligation it creates.

The Court therefore finds that Defendant's arguments regarding lack of consideration and Plaintiff not being a proper holder fail,

and as to this ground Defendant's Motion for Summary Judgment will be denied while Plaintiff's Motion for Summary Judgment will be granted.

### 4. Plaintiff's breach of contract claim is not preempted by the UCC

Plaintiff argues, correctly, that a promissory note is a binding contract under Michigan law from which a breach of contract claim can arise. Dkt. 19 at Pg ID 252, 269 (citing *Collateral Liquidation, Inc. v. Renshaw*, 301 Mich. 437, 443 3 N.W. 2d 834 (1942)).

Defendant does not dispute that a promissory note is an enforceable contract, but argues instead that Plaintiff's breach of contract claim is preempted by the UCC. Dkt. 27 at Pg ID 326-27.

In support of this argument Defendant's cite *Crawford v. JP Morgan Chase Bank, NA*, No. 08-CV-12634 (E.D. Mich. June 30, 2009) in which the court found the UCC preempted common law claims of breach of contract related to the issuance of cashier's check.

Defendant is correct that the UCC can preempt common law claims in certain instances, but only where it "provides a comprehensive remedial scheme" that would be nullified by allowing a common law claim to proceed. *Id.* at * 5 (noting that § 1-103 of the UCC, "*allows* the continued application of all supplemental bodies of law unless they are *explicitly displaced* by the UCC, raising the

19

possibility that common law claims can be brought in an area primarily governed by the UCC")(emphasis added)

In *Crawford*, the court found that the UCC *did* provide such a scheme "in relation to the duties and obligations related to the issuance of cashier's checks." *Id.* at * 5 (citing MCL 440.3412).

Defendant cites no other authority finding that breach of contract claims are generally preempted for promissory notes like the one at issue here, is not a cashier's checks. In other words Defendant offers no case law holding that 1) the UCC contains a comprehensive remedial scheme governing defaults on promissory notes that would be nullified by permitting common law claims to proceed and 2) that comprehensive scheme explicitly displaces common law breach of contract claims for such defaults.

In fact, Michigan courts regularly decide breach of contract claims for alleged nonpayment of promissory notes. *See e.g.*, *DCM Ltd. Partnership v. Wang*, 555 F. Supp. 2d 808, 810 (E.D. Mich. 2008)(deciding summary judgment motion for breach of contract, quantum meruit, and unjust enrichment claims based on defendant's failure to pay a promissory note).

Finally, another judge in the Eastern District of Michigan has expressly rejected a similar preemption argument made based on *Crawford. See CAM Logic, Inc. v. Bank of America, N.A.*, 2016 WL 9738114 at *2 (E.D. Mich. Sept. 14, 2016)(Friedman, J.). In *CAM*

*Logic* the court found *Crawford* did not support the broad proposition that Article 3 of the UCC—which governs negotiable instruments like the Note here— indiscriminately preempted all breach of contract claims arising from check-related transactions. *Id.* at *5.

The Court therefore denies Defendant summary judgment on the defense that the UCC preempts Plaintiff's breach of contract claim.

### 5. The Note's 20% interest rate is usurious

Defendant contends that even if the Court finds that the Note is supported by sufficient consideration and that Plaintiff is a holder who may enforce it, Plaintiff may not enforce it for the full amount of interest because the 20% annual interest rate promised in the Note is usurious under Michigan law. Dkt. 27 at Pg ID 337.

Michigan law generally prohibits non-business entity loans at interest rates greater than 7% per year. MCLA §438.31. A non-regulated lender (i.e., an individual like Plaintiff) may make a loan to an un-incorporated borrower (i.e., an individual like Defendant) with an interest rate up to 25% per year under the business entity exception. MCL 438.61(a). But in order for the business entity exception to apply here Plaintiff would have to show either that the Promissory Note included language discussing the business purpose for which the loan would be used or that there were some form of sworn statement accompanying the Note describing its business

purpose. *Id.* ("Business entity means a corporation, trust, estate, partnership, cooperative or association or a natural person who furnishes to the extender of the credit a sworn statement in writing specifying the type of business and business purpose for which the proceeds of the loan or other extension of credit will be used").

Additionally, Plaintiff has not made any argument that the loan to Defendant (while guaranteed personally by him in form) was business loan by nature. The most Plaintiff has presented is the September 25, 2012 email exchange between her and Defendant in which Defendant indicates the loan under the Promissory Note would be to WV Urban Developments, LLC, Dkt. 11-2 at Pg ID 110, and her testimony that Defendant communicated to her that the money she was loaning him would be reinvested in his new LLC, WV Urban Investments. Dkt. 27-1 at Pg ID 358.; *see also* Dkt. 11-2 at Pg ID 110. Even under a broad reading, these communications do not meet the sworn statement requirement. *See Holland v. Michigan Nat. Bank-West*, 166 Mich. App. 245, 248, 255-56, 258-59 (Mich. App. 1988)(signed statement accompanying a promissory note—even though it was not properly executed by a notary public—indicating plaintiffs were an unincorporated business entity and that the proceeds would be used solely for business purposes was sufficient to exempt the loan from the 7% usury statute limitation on interest rates); *Pisciotta v. Kardos*, 2017 WL 4447164 at *3

(Mich. App. Oct. 5, 2017)(finding cross-collateralization provisions in mortgage documents indicated the properties at issue were being leased as part of a larger scale leasing operation by plaintiff—i.e. the money loaned for the properties was being used for a business purpose); *Krause v. Griffis*, 443 N.W. 2d 444, 445 (Mich. App. 1989)(finding sworn statement requirement of business entity exception was satisfied by the wording of the underlying land contract at issue).

In each of these cases, however, plaintiffs could point to language either in the promissory note itself, or in an additional contemporaneously executed document, which referenced a business purpose that couldsatisfy the sworn statement requirement of the business entity exception. No such language is part of the Note here.

Consequently, the Court will grant Defendant Summary Judgment on his argument that the 20% interest rate in the Promissory Note is usurious for this type of loan/transaction under Michigan law.

### i. Equitable estoppel does not apply

Plaintiff argues that even if the 20% rate of interest is usurious for this type of loan, Defendant should be estopped from asserting it as defense because he drafted the Note and had superior

knowledge of enforceable interest rates as a practicing attorney in the banking field. Dkt. 19 at Pg ID 264-68.

Plaintiff notes that several other states have adopted a doctrine of equitable estoppel to prevent usury as a defense in similar circumstances. Plaintiff cites cases from several other jurisdictions that an educated borrower cannot use usury as defense against the enforcement of a contract he drafted. Dkt. 19 at Pg ID 264-68 (citing *Heubusch v. Boone*, 192 SE 2d 783 (1972); *Massie v. Rubin*, 270 F 2d 60 (10th Cir. 1959); *Holt v. Rickett*, 238 SE 2d 706 (1977); *Eiberger v. West*, 281 S.E. 2d 148, 149-50 (Ga. 1981)).

No Michigan court, however, has adopted this equitable rule. And at least one has expressly found Michigan law does not recognize this type of estoppel argument despite the strong equitable interest in preventing the drafter of a contract from wriggling out of it based on his own drafting error. *See Osinski v. Yowell*, 354 N.W.2d 318, 320, 322 (Mich. App. 1984)(reversing the trial court's finding that a defendant was estopped from asserting a usury defense where the defendant/borrower who drafted the promissory note was a real estate broker with greater familiarity with the usury law than plaintiff/lender).

Finally, because Michigan law prohibits the collection of any interest under a contract that charges an interest rate above the maximum allowed by law the Court finds Plaintiff may not recover

any interest under this Promissory Note. MCL §438.32 ("Any seller or lender or his assigns who enters into any contract or agreement which does not comply with the provisions of this act or charges interest in excess of that allowed by this act is barred from the recovery of any interest . . .").

For the reasons discussed above the Court therefore finds the Promissory Note is enforceable as to the principal amount of $194,288.92 (Dkt. 1-4 at Pg ID 21), but not as to any amount of interest.

### b. Unjust Enrichment/Quantum Meruit

Because the Court grants Plaintiff summary judgment on her contract claim, it does not reach her alternative unjust enrichment claim.

### c. Plaintiff's Fraud Claims

Plaintiff has also made a variety of fraud claims against Defendant; specifically that he committed either fraud or, at a minimum innocent misrepresentation, by implicitly representing to her that the 20% interest rate specified in that Note was non-usurious. She argues that this fraud or misrepresentation induced her to agree to the Promissory Note arrangement rather than seek immediate repayment of the money owed to her. Dkt. 11-6 at Pg ID 121.

The relief Plaintiff seeks for these fraud claims is identical to what she requested for her breach of contract claims: 1) judgment

against Defendant in the amount of $344,107.26 (principal amount in the Promissory Note plus the 20% interest per year); 2) "exemplary" damages including Plaintiff's attorney's fees and costs; and 3) "such other relief as equitable and just."

## 1. Fraudulent Misrepresentation

Plaintiff argues that Defendant fraudulently induced her to agree to the Promissory Note guarantee by representing that she would be able to collect 20% interest on it.

In order to have a claim for fraudulent misrepresentation the Plaintiff must prove: 1) the defendant made a material representation; 2) it was false; 3) the defendant either knew it was false or made it recklessly without knowledge of its truth; 4) the representation was made with the intent that the plaintiff would act upon it; and 5) the plaintiff did act, which caused the plaintiff to suffer damages. *Hi-Way Motor Co v. Int'l Harvester Co*, 398 Mich. 330, 336; 247 NW2d 813 (1976). Plaintiff's reliance on the false representation must also have been reasonable. *Nieves v Bell Indus, Inc*, 204 517 N.W. 2d 235, 238 (Mich. Ct. App. 1994).

### i. Material Representation

Plaintiff' position is that Defendant's statements in the email exchange on June 20 and 24, 2013 and subsequent phone call were to the effect that the terms of Note had been changed because 50%

26

interest was criminally usurious. Plaintiff contends these statements constituted a representation about a material part of their agreement. Dkt. 19 at Pg ID 273 (citing Dkt. 11-3 at Pg ID 112; Dkt. 11-5 at Pg ID 117).

Defendant emailed Plaintiff a copy of the signed Note on June 20, 2013. Dkt. 11-3 at Pg ID 112. In her deposition Plaintiff testified that after that email exchange she and Defendant had a phone call during which he told her 50 % was criminal usury and that was why he had to offer her 20% instead. Dkt. 27-1 at Pg ID 363, 79:18-81:12. Defendant does not dispute that this was what he said to Plaintiff on the phone, but argues that it was not an affirmative misrepresentation because he never explicitly stated "20% is not usurious." Dkt. 27 at Pg ID 328-30.

"A misrepresentation need not be express, but may be inferred by the circumstances which are in fact equivalent to positive representation." *Sullivan v. Ulrich*. 40 N.W.2d 126, 131 (Mich. 1949).

Given the parties' prior email exchange, it would seem that Plaintiff could have fairly inferred that Defendant was representing that 20% was a legally invalid amount of interest. But a reasonable jury could also conclude, as Defendant argues, that the only representation Defendant made to Plaintiff was that 20% was not *criminally* usurious, not technically a misrepresentation.

ii.    *Representation was false*

Assuming the inferred misrepresentation was that 20% interest was non-usurious, a jury could reasonably find that this representation was legally inaccurate as discussed above and thus false.

### iii.    *Knowingly false or reckless disregard for truth*

Plaintiff has not offered specific evidence establishing that Defendant *knew* that an interest rate of 20% constituted civil usury under Michigan law.  Her argument appears instead to be that he should have known given his familiarity with banking law—in other words, though she does not characterize her argument this way, that he offered her 20% interest after recklessly disregarding the possibility that that the revised interest rate might also be unenforceable. *See* Dkt. 19 at Pg ID 268, 273.

Defendant argues that he did not deal with these types of loan transactions regularly in his work as an attorney, but admits that he had "the expertise to research the usury statute to determine if 20% was usurious." Dkt. 27 at Pg ID 331. Defendant further argues that he did not conduct this research because Plaintiff did not ask him to do so, and he did not have any other affirmative obligation to do so. A reasonable jury could find either way on the question of whether Defendant acted with reckless disregard as to the falsity of the representation that 20% interest was non-usurious by failing to conduct further research.

*iv.    Representation with the intention that Plaintiff rely on it*

Defendant's email communications with Plaintiff about the Note indicate it was his intent that the interest rate serve as an incentive for Plaintiff to loan him the money he owed her. Defendant stated in his September 24, 2012 that he would "make [Plaintiff] the same deal" he offered another investor, which was the 50% interest rate. Dkt. 11-2 at Pg ID 110; Dkt. 11-3 at Pg ID 112; Dkt. 1-6 at Pg ID 121. He emailed her the Note on June 20, 2013, which contained the 20% interest rate instead. Dkt. 11-3 at Pg ID 112; Dkt. 11-4 at Pg ID 2. When Plaintiff replied on June 24, 2013 asking Defendant to send her a new note with the previously agreed upon 50% interest term, Defendant responded that 50% was criminal usury, but stated "we'll talk." Dkt. 11-5 at PG ID 117. At this point Plaintiff had not accepted the loan terms. When they spoke on the phone shortly after the June 24, 2013 email exchange Defendant's representations about the terms of the loan—specifically the interest rate, which was Plaintiff's sticking point for agreeing to the loan—were made for the purpose of getting Plaintiff to agree to the loan arrangement laid out in the Note.

Defendant attests that he did not intend the Note to be a promissory note, which is dubious given that he drafted it and titled it "Promissory Note." *See* Dkt. 11-4 at Pg ID 115. He then states that he did have "every intention of paying [Plaintiff] back under

its terms." Dkt. 27-2 at Pg ID 390. Neither of these statements nor any argument in Defendant's briefing directly addresses his intent in telling her he was guaranteeing the Note at 20% interest because 50% was criminally usurious. Defendant's intent is a jury question.

### v.    *Plaintiff acted in reliance upon the representation*

Plaintiff attested in her affidavit, and Defendant does not dispute, that she agreed to loan Defendant the money, rather than seek immediate repayment, after he made the representation about the 20% interest rate. Dkt. 11-6 at Pg ID 121.

Plaintiff appears to argue through statements in her affidavit that her reliance was reasonable because Defendant is her brother and a lawyer who has assisted her with legal matters in the past. Dkt. 19 at Pg ID 258-59; *see also Tocco v. Richman Greer Professional Ass'n*, 912 F. Supp.2d 494, 516 (E.D. Mich. 2012)(citing *Foreman v. Foreman*, 710 N.W. 2d 167, 175 (2005))(plaintiff must show reliance is reasonable in order to prevail on a fraudulent misrepresentation claim).

Defendant argues that reliance was unreasonable because the parties were on opposite sides of a business negotiation and thus in an "adversarial" relationship. Dkt. 27 at Pg ID 321. Whether Plaintiff reasonably relied on Defendant's statements is a factual question that the jury must resolve.

*vi.*     *Plaintiff suffered damage as a result of her reliance*

Since loaning Defendant the money with the expectation that she would receive a pay-out with interest, Plaintiff has made several requests for payment each of which Defendant has ignored or refused. Dkt. 19 at Pg ID 260.

The email correspondence shows Defendant has acknowledged that she is owed $196,416.44; the amount he personally guaranteed in the Note. Dkt. 11-2 at Pg ID 110. Defendant has not disputed that Plaintiff is owed this money, and in fact testified that he had every intention of paying it to her—just not pursuant to the Note, which he does not believe is enforceable. Dkt. 27-2 at Pg ID 389.

There is thus no dispute of material fact that Plaintiff has suffered economic loss as a result of her reliance on Defendant's representation regarding the interest rate; namely the amount in interest that she would be owed under the 20% interest term of the Note.

Because Plaintiff has not established that as a matter of law on this record Defendant made a material misrepresentation that 20% was a generally non-usurious interest rate or that he did so either with knowledge of its falsity or reckless disregard as to its falsity the Court denies Plaintiff's Motion for Summary Judgment as to her fraudulent misrepresentation claim.

**2. Silent Fraud**

Plaintiff has also argued a silent fraud claim as an alternative to her fraudulent misrepresentation claim. Dkt 19 at Pg ID 274-76. "Silent fraud is essentially the same as fraudulent misrepresentation except that it is based on a defendant suppressing a material fact that he or she was legally obligated to disclose, rather than making an affirmative misrepresentation." *5504 Reuter, L.L.C. v. Deutsche Bank Nat. Trust Co.*, 2014 WL 7215197 at * 4 (Mich. App. Dec. 18, 2014)(quoting *Alfieri v. Bertorelli*, 813 N.W. 2d 772 (2012))(internal quotations omitted). To prove silent fraud therefore Plaintiff must show Defendant "suppressed the truth with intent to defraud" and that Defendant had a legal or equitable duty of disclosure." *Lucas v. Awaad*, 830 N.W. 2d 141, 152 (Mich. App. 2013)(citing *Roberts v. Saffell*, 760 N.W. 2d 715 (2008), aff'd 483 Mich. 1089 (2009)).

Plaintiff's silent fraud claim fails as a matter of law because she has put forth no specific evidence that Defendant *intended* to defraud her at the time he drafted the Note and discussed the interest term on the phone.

While she argues in her response to Defendant's Cross Motion that he admitted to not intending to pay her *any* money under the Note, including the interest, Dkt. 29 at Pg ID 409-10, Defendant correctly notes in his reply that he stated that it was not his intent that the Note itself function as a Promissory Note, but that he had

"every intention of paying [Plaintiff] under its terms." Dkt. 27-2 at Pg ID 389.

Plaintiff's allegations regarding Defendant's intent in changing the interest rate to 20% are simply that "he should have known better," not that he acted with intent to defraud. This is insufficient evidence to create a question of fact for a silent fraud claim. Accordingly, Defendant's motion for summary judgment is granted with respect to this count.

### 3. **Fraud based on Bad Faith Promise**

Plaintiff's bad faith promise claim fails for the same reason as her silent fraud claim. The record is devoid of any specific facts that could establish Defendant had no intention of performing under the terms of the Note (i.e. paying the full 20% interest) at the time he drafted it.

While Plaintiff is correct that an actionable tort exists under Michigan law against parties who make promises in bad faith without intention of performance, *Hi-Way Motor Co.*, 398 Mich. 330, 337-38 (1976), in order to prove a bad faith promise claim "the plaintiff must show the defendant did not intend to perform the promise at the very time of making the representations, or almost immediately thereafter." *Daneshar v. Kipke*, 2015 WL 13035524 at *3 (E.D. Mich. Mar. 31, 2015).

Plaintiff again argues that Defendant admitted in his affidavit that he had no intention of paying her the money owed to her under the Note, including the interest, when he executed it. Dkt. 29 at Pg ID 409.

But as discussed above this argument rests on an incomplete reading of Defendant's affidavit, which later states he did intend to pay Plaintiff all the money owed to her under the Note. The affidavit of Defendant there is not sufficient evidence to show that Defendant did not intend to perform when the Note was executed.

Accordingly, Defendant's Motion for Summary Judgment is granted as to Plaintiff's bad faith promise claim, and Plaintiff's Motion for Summary Judgment is denied.

### 4.  Negligent Misrepresentation

As an alternative to her fraudulent misrepresentation claim Plaintiff argues that Defendant made a negligent misrepresentation when he implied that the 20% interest term was non-usurious. Dkt 19 at Pg ID 278-80.

To make out a cause of action for negligent misrepresentation a plaintiff must proffer facts that she justifiably relied to her detriment on information prepared without reasonable care by Defendant and that Defendant owed her a duty of care. *Fejedelem v.*

*Kasco,* 269 Mich.App. 499, 502, 711 N.W.2d 436, 437 (2006) (quoting *Mable Cleary Trust v. The Edward–Marlah Muzyl Trust,* 262 Mich.App. 485, 502, 686 N.W.2d 770, 783 (2004)).

Here, Plaintiff has not provided evidence that Defendant owed her any sort of duty, so her negligent misrepresentation claim must fail.. "Negligent misrepresentation is an action in tort and therefore it must "involve a relationship that would give rise to a duty to disclose without enforcing the contract promise itself." *Barter v. U.S. Bank, N.A.*, 2011 WL 124502 at *5 (E.D. Mich. Jan. 13, 2011)(citing *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F. 3d 1126, 1134 (1995))**.**

In other words unlike for claims of innocent misrepresentation, discussed below, where the underlying duty to disclose results from the privity of contract between the parties that one party is trying to induce the other to agree to, negligent representation requires some allegation of a *separate* legal duty.

 Plaintiff argues that separate duty of care arises from her familial relationship with Defendant and the fact that he is a practicing attorney. But those facts do give rise to a professional or business duty of care the breach of which would state a claim for negligent misrepresentation. *See Barter*, 2011 WL 124502 at * 5 (finding no duty to give rise to a negligent misrepresentation claim where

plaintiffs had "not alleg[ed] that Defendants were employed to provide them with accurate information").

Accordingly, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied as to Plaintiff's negligent misrepresentation claim.

### 5. Innocent Misrepresentation

Finally, Plaintiff argues that even if Defendant did not make a *negligent* misrepresentation, the record raises a question of fact at a minimum that Defendant made an *innocent* misrepresentation, which is separately actionable under Michigan law. Dkt. 19 at Pg ID 280.

The elements of innocent misrepresentation are: (1) a representation in a transaction between two parties; (2) that is false; (3) that actually deceives the other party; (4) that the other party relied on; (5) that the other party suffered damage from; and (6) the party making the misrepresentation benefited from it. *In re Moiles*, 840 N.W.2d 790 (2013).

As discussed above regarding Plaintiff's fraudulent misrepresentation claim there is a question of fact as to what the representation actually was—*i.e.* can it be inferred from context that Defendant represented to Plaintiff that 20% was non-usurious under civil and criminal usury laws, or only that 20% was not criminally usurious.

The question of whether Defendant is liable for innocent misrepresentation must go to the jury. Consequently, the Motions for Summary Judgment on this claim will be denied.

**6. Conclusion**

Regarding each count of the Amended Complaint in turn:

**Counts I and II, Default on Promissory Note and Breach of Contract:** Plaintiff's Summary Judgment Motion is GRANTED and Defendant's Summary Judgment Motion is DENIED, with the exception that Plaintiff may not recover any interest under the terms of the Promissory Note.

**Count III Unjust Enrichment:** Pleaded as an alternative to Counts I and II and thus not reached. The court will therefore DISMISS this Count without prejudice.

**Count IV Fraudulent Misrepresentation:** Because the Court finds a genuine dispute of material fact remains it DENIES both cross motions for summary judgment.

**Count V Silent Fraud:** Plaintiff's Summary Judgment Motion is DENIED and Defendant's Summary Judgment Motion is GRANTED. This Count is therefore DISMISSED.

**Count VI Fraud Based on Bad-Faith Promise:** Plaintiff's Summary Judgment Motion is DENIED and Defendant's Summary Judgment Motion is GRANTED. This Count is therefore DISMISSED.

**Count VII Negligent Misrepresentation:** Plaintiff's Summary Judgment Motion is DENIED and Defendant's Summary Judgment Motion is GRANTED. This Count is therefore DISMISSED.

**Count VIII Innocent Misrepresentation:** Because the Court finds a genuine dispute of material fact remains it DENIES both cross motions for summary judgment.

Plaintiff's only remaining claims—*i.e.* those on which neither party received summary judgment—are therefore Count IV for Fraudulent Misrepresentation and Count VIII for Innocent Misrepresentation.

The Court notes, however, that Plaintiff sought the same relief for these remaining claims as she did on Counts I and II, which have now been decided in her favor. Plaintiff is therefore DIRECTED to notify the Court and opposing counsel within ten (10) days as to whether she wishes to pursue or voluntarily dismiss Counts IV and VIII, and if she chooses to dismiss those claims, to submit a proposed judgment on Counts I and II. **SO ORDERED.**

Dated: March 29, 2018    s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on March 29, 2018.

s/A. Chubb
Case Manager