**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ZORA DUGAN,

        Plaintiff,

v.

MIROSLAV VLCKO,

        Defendant.

Case No. 16-13252
Hon. Terrence G. Berg

**ORDER DENYING DEFENDANT'S MOTIONS FOR RECONSIDERATION**

**I.   Introduction**

This matter is before the Court on Defendant Miroslav Vlcko's motions for reconsideration, ECF No. 37, 41, of the Court's order granting in part and denying in part Plaintiff's motion for summary judgment, ECF No. 36, docketed on March 29, 2018. Having reviewed the motion and accompanying exhibits, and the remainder of the record, the Court finds that these documents adequately present the issues now before the Court, and that oral argument would not aid the decision. Accordingly, the Court will decide the motion without a hearing. E.D. Mich. LR 7.1(f)(2). For the reasons set forth

1

below, it is **ORDERED** that Defendant's motions for reconsideration are **DENIED**.

## II. Background

The Court set forth the facts giving rise to this case in its March 29, 2018 Order and repeats that information here for convenience.

In October 2007, Plaintiff invested approximately $150,000 in WV Investments LLC, a real estate venture that was majority-owned and managed by her brother, Defendant Miroslav Vlcko. ECF No. 11 PageID.89. The funds were to be invested in a shopping center in the greater Washington, D.C. area. From the record, it does not appear that anything in writing memorialized the investment in WV Investments, LLC. Nonetheless, Plaintiff received monthly disbursements as returns on this investment from October 2007 through June 2012. ECF No. 11 PageID.89.

On or about September 29, 2011 Defendant emailed Plaintiff to let her know that the shopping center was being sold, with an anticipated closing of February 1, 2012. ECF No. 11 PageID.389; ECF No. 11-1 PageID.108. In that email Defendant Vlcko also stated "when the loan closes [Plaintiff] will receive the unpaid portion of [her] original contribution, and [her] percentage of the net sale proceeds" after the closing costs and expenses were deducted. ECF No. 11-1 PageID.108.

Plaintiff continued receiving monthly disbursements until June 2012. But she did not receive any repayment of her original investment or any money representing a percentage of the net sale proceeds. ECF No. 11 PageID.90. Plaintiff made repeated requests to Defendant during July and August 2012 for a return of her principal investment based on the sale of the shopping center, but Defendant told her he did not have the money. ECF No. 11 PageID.90. Plaintiff testified that he told her that "he had to use that money for his other projects." ECF No. 27-1 PageID.356 (Pltf's Dep. at 50).

On September 24, 2012 Defendant emailed Plaintiff with the message: "My records show that you're owed $80,377.00 return on your original investment, and $116,039.44 as a return on percentage interest, for a total of $186,416.44." ECF No. 11-2 PageID.110. In that same email Defendant told her he would make her the same "deal" he had extended to another investor in the property—"50% interest on your money from 9/1/12 until you get paid"—if she would agree both not to collect this debt and to allow him to use the funds in a new investment. ECF No. 11-2 PageID.110.

Plaintiff responded on September 25, 2012 seeking clarification as to the terms of the loan. ECF No. 11-2 PageID.110. In his same-day responses to her questions Defendant told her 1) the 50% interest rate would be for each year of the loan; 2) the life of the loan would be until Defendant and his LLC could recoup "the $8,000,000

cash I have in the projects," likely by year-end; 3) the loan would be to WV Urban Developments guaranteed by Defendant and Richard Walker (Defendant's partner in the LLC). ECF No. 11-2 PageID.110. According to Plaintiff, Defendant advised her that he would execute a Promissory Note containing the agreed upon terms. ECF No. 11 PageID.91.

After this email exchange, however, Defendant failed to send Plaintiff a Promissory Note for the loan. ECF No. 11 PageID.91. Finally, after several requests from Plaintiff, Defendant emailed the Note to Plaintiff on June 20, 2013. ECF No. 11-3 PageID.112. Signed by Defendant and Richard Walker[1], the Note guaranteed payment of $194,288.92 annually to Plaintiff, representing a 20% return on the loan amount. It was effective as of December 12, 2012, personally guaranteed by Defendant and Walker, and payable on demand. ECF No. 11-4 PageID.115. The Note does not name or obligate WV Urban Developments, LLC.

Upon seeing that the Note contained a 20% interest term, instead of the 50% that she and Defendant had previously discussed, and that it was effective as of December 2012, rather than September 2012, Plaintiff emailed Defendant on June 24, 2013 asking him

---

[1] Defendant initially filed a Third Party Complaint against Richard Walker. ECF No. 14. The parties ultimately entered into a consent judgment under which Walker agreed to indemnify Vlcko for 50% of any judgment entered against Vlcko in this action. ECF No. 17.

4

to send her "a new note" with the 50% interest term and a September 1, 2012 effective date. ECF No. 11-5 PageID.117. Defendant replied the same day and told her he could not include a 50% interest term in the Note because it was criminal usury and that they would "talk." *Id.*

According to Plaintiff's deposition testimony, shortly after this email exchange Plaintiff and Defendant spoke on the phone and Defendant reiterated that he had included a 20% term because the 50% interest rate was usurious. ECF No. 27-1 PageID.363. Plaintiff testified that she understood this to mean that 20% was non-usurious and thus enforceable and that she agreed to the loan under those terms. *Id.* Defendant does not dispute that this phone conversation occurred or what was discussed during it.

No interest payments were made on the Note. Plaintiff claims she made her first demand for payment on the Note over the phone in late 2013 and made several subsequent demands throughout 2014. ECF No. 11 PageID.92. Plaintiff states that Defendant responded by indicating that all of the funds she had lent had been used by WV Urban Investments LLC on options to purchase real property, but that those investments had fallen through and she was out of luck. *Id.* Defendant does not appear to dispute this account.

On June 3, 2016 Plaintiff made her final demand for payment on the Promissory Note in writing. ECF No. 11 PageID.92; ECF No. 11-8 PageID.129–30 (demand letter from Plaintiff's lawyer). In that letter Plaintiff requested a payment of $330,938.79, which she calculated as her principal investment ($194,288.93) plus the 20% per year interest ($136,649.87) over the course of three years.

Defendant did not respond to that letter and has made no payments on the Note.

Plaintiff filed this suit on September 9, 2016. ECF No. 1. In her Amended Complaint, filed November 28, 2016, she brought causes of action for: 1) default on promissory note; 2) breach of contract; 3) unjust enrichment; 4) fraudulent misrepresentation; 5) silent fraud; 6) bad faith promise; 7) negligent misrepresentation; and 8) innocent misrepresentation. ECF No. 11.

Defendant meanwhile filed a Third-Party Complaint against Richard Walker, his partner in WV Investments LLC and the other personal guarantor of Plaintiff's Promissory Note on November 21, 2016. ECF No. 9. On January 25, 2017, Vlcko and Walker entered into a Consent Judgment under which Third-Party Defendant Walker agreed to indemnify Defendant Vlcko for 50% of any judgment Plaintiff won against Defendant Vlcko plus 50% of Defendant Vlcko's costs in defending against this action. ECF No. 17.

Plaintiff moved for summary judgment on April 4, 2017. ECF No. 240. Defendant failed to respond, so the Court issued a text only order on September 6, 2017 ordering Defendant to respond by September 22, 2017. On that date, Defendant filed a Cross-Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment. Plaintiff responded on October 13, 2017, ECF No. 29, and Defendant replied on October 27, 2017, ECF No. 30.

The Court heard oral argument on the cross motions for summary judgment on December 11, 2017. On March 29, 2018, the Court denied in part and granted in part Defendant's Cross Motion for Summary Judgment and granted in part and denied in part Plaintiff's Motion for Summary Judgment. ECF No. 36. Because the Order granted summary judgment to Plaintiff on Counts I (Default on Promissory Note) and II (Breach of Contract), and to Defendant on Counts III (Unjust Enrichment), V (Silent Fraud), VI (Fraud Based on Bad-Faith Promise) and VII (Negligent Misrepresentation), the only remaining Counts were IV (Fraudulent Misrepresentation) and VIII (Innocent Misrepresentation). As to these two remaining Counts, Plaintiff had requested the same relief as she did for Counts I and II, upon which she had prevailed. Consequently, on April 13, 2018, Plaintiff voluntarily dismissed Counts IV and VIII, the remaining two counts of her complaint. The Court entered

7

judgment in favor of Plaintiff and against Defendant on that same day in the amount of $194,288.92. ECF No. 39.

Defendant moved for reconsideration of the Court's summary judgment order on April 12, 2018, ECF No. 37, and again for reconsideration of the Court's order entering judgment for Plaintiff, ECF No. 41.

### III. Legal Standard

Under Local Rule 7.1, the Court may grant a motion for reconsideration if the movant satisfactorily shows: (1) the existence of a palpable defect that misled the parties and the Court; and (2) the correction of such defect would result in a different disposition of the case. E.D. Mich. L.R. 7.1(h)(3). A defect is palpable if it is "obvious, clear, unmistakable, manifest, or plain." *Olson v. Home Depot*, 321 F. Supp. 2d 872, 874 (E.D. Mich. 2004). Further, the Court will not grant a motion for reconsideration "that merely present[s] the same issues ruled upon by the court, either expressly or by reasonable implication." *Id.* Plaintiff requested identical relief for each of the six counts in her Complaint on which the Court granted summary judgment. Defendant cannot prevail on his motion for reconsideration unless he provides evidence sufficient to conclude that the Court's decision was incorrect as to all six because any other finding would not "result in a different disposition of the case" pursuant to E.D. Mich. L.R. 7.1(h)(3).

### IV. Analysis

In his motions for reconsideration, Defendant alleges that the Court made five factual or legal errors in granting summary judgment in Plaintiff's favor. Defendant does not identify any palpable defect which has misled the parties, the correction of which would change the disposition of the case. Rather, Defendant seeks to relitigate matters already decided. Defendant responds to the Court's Order as if it is opposing counsel's brief, presenting arguments largely identical to those the Court has already considered and rejected. Nothing in Defendant's motion for reconsideration persuades the Court that any palpable error misled the Court or the parties in the Court's previous order. The Court was correct to enter judgment in Plaintiff's favor. Defendant's remedy to the correct the kind of error that he alleges in the motion for reconsideration lies with the Court of Appeals.

*a. Factual Issue I: Consideration for the Promissory Note*

Defendant first claims that the Court erred in finding adequate consideration for the Promissory Note based on the antecedent debt Defendant's company, VW Investments, LLC, owed to Plaintiff. ECF No. 37 PageID.518. This is the precise ground Defendant raised in his late-filed Cross Motion for Summary Judgment. ECF No. 27 PageID.323. As the Court previously found, Defendant

clearly received a benefit from Plaintiff's agreement not to demand repayment of her investment and to loan these funds to Defendant's new venture, even if the original investment was initially paid to Walker. Where the benefit of a payment flows to an individual, that benefit may serve as consideration for a promise made from the beneficiary to the benefactor. *See Scott v. Zimmerman*, No. 296077, 2011 WL 1446100, at *7 (Mich. Ct. App. Apr. 14, 2011). Defendant's claim that, as a majority-holder and manager of a company, he does not benefit from an agreement not to collect an antecedent debt to that company is disingenuous. Defendant states that Plaintiff's original investment in WV Investments, LLC was actually a purchase of Walker's ownership interest in the LLC and that "none of Plaintiff's funds flowed to the LLC or had any impact on the management of the LLC." ECF No. 37 PageID.519. Plaintiff's deposition testimony, however, was that she believed she was purchasing Walker's shares, and although she was uncertain, she believed she wrote the check to "Mirko [Defendant] or to the LLC for the shopping center." ECF No. 27-1 PageID.349 (Dep. of Plaintiff at 24). But regardless, a sale of shares of an LLC represents financial benefit to the LLC.

In an email to Plaintiff dated September 24, 2012, Defendant explicitly acknowledged that the LLC owed Plaintiff what he calculated to be $196,416.44, based on her original investment in the

LLC and a return on her percentage interest from the sale of the shopping center. ECF No. 11-2 PageID.110. The following day Defendant further explained his need for a bridge loan of these funds "[u]ntil we can get an injection of some capital and recoup some of the $8,000,000 cash I have in the projects . . . Plan on having you paid by year-end." *Id*. The Promissory Note was signed personally by Defendant and Walker. Both parties understood that Plaintiff was owed a certain amount from the sale of the Brentwood shopping center that had not been paid back. The funds from that sale had apparently been retained by Vlcko and "that money was put on other projects." ECF No. 27-1 PageID.356 (Pltf's Dep. at 51). Plaintiff's agreement to allow the LLC to retain the funds that Defendant stated were owed to Plaintiff was the consideration for the Note. In return for the benefit of Plaintiff not demanding the immediate return of what was owed to her and agreeing instead to allow Defendant to use those funds in his other projects, Defendant agreed to pay the amount in the Note to Plaintiff. There was no palpable error in this finding.

> b. *Factual Issue II: Personal Liability for the Debt of an LLC*

Second, Defendant argues that he acted only as manager of WV Investments LLC when he interacted with Plaintiff. ECF No. 37

PageID.520. But Defendant personally guaranteed the Note as an individual, not as the LLC. ECF No. 1-4 PageID.21. Therefore, the argument that Defendant is not liable as an individual is meritless.

### c. *Factual Issue III: The Holder or Holder in Due Course Argument*

Defendant next takes issue with the Court's statement that he abandoned his argument that Plaintiff was not a holder in due course of the Promissory Note. ECF No. 37 PageID.521. Comparing Defendant's Cross-Motion for Summary Judgment, ECF No. 27, with his Reply in Support of Cross-Motion, ECF No. 30, it is clear that Defendant altered his argument. Rather than making the case that Plaintiff was not a "holder in due course," Defendant argues in his Reply that Plaintiff was not a holder at *all*. The term "holder in due course" is not present in Defendant's Reply. ECF No. 30. In both pleadings, however Defendant cites to sections of Michigan's Uniform Commercial Code defining who may enforce an instrument which refer to the "holder." MCLA § 440.3301. The law distinguishes between the rights of a mere "holder" of an instrument and those of a "holder in due course," the main difference being that some defenses to enforcement available against a mere holder are not available against a holder in due course. 2 White, Summers, &

Hillman, Uniform Commercial Code § 18:30 (6th ed. 2017) ("A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in due course takes free of the claim to the instrument."). Here, Defendant's argument is that Plaintiff fails to qualify even as a mere holder of the negotiable instrument. In any event, such inconsequential dicta in an opinion is hardly grounds for a motion for reconsideration.

### d. *Legal Issue I: Email Delivery*

Defendant goes on to re-argue matters that this Court thoroughly considered when ruling on the motions for summary judgment. He first takes issue with the Court's statement that delivery of a negotiable instrument via e-mail appears to satisfy the plain meaning of a voluntary transfer of possession because the Court did not cite legal authority for that statement. ECF No. 37 PageID.521. But the essence of a term's "plain meaning" is that legal authority is unnecessary in order to divine that meaning. Failure to cite legal authority is not in itself grounds for granting a motion for reconsideration if the statement is otherwise accurate. Instead, a litigant

must show a palpable defect that, if corrected, would alter the disposition of the motion. E.D. Mich. L.R. 7.1(h)(3). Upon review, the Court again finds that the plain meaning of "voluntary transfer of possession" includes e-mail delivery. An e-mail delivers a document from a sender to a recipient. An ordinary person would understand that to be true, which is the basis for determining the plain meaning of a term. Moreover, the evidence in this record demonstrated that Defendant intended to transfer possession of the Note to Plaintiff by emailing her a signed copy of it.

Defendant reiterates his argument that only an original copy of a negotiable instrument (otherwise known as a "wet ink" copy) is an enforceable instrument under the UCC. ECF No. 37 PageID.522–526. But he is unable to produce any binding legal authority to support this proposition. In fact, he admits that "[t]here is no case law in Michigan" contradicting the Court's conclusion that e-mail delivery of a negotiable instrument is sufficient to convey enforcement rights. ECF No. 37 PageID.526. Knowing that he lacked any such authority, it is unclear why Defendant believes the Court committed a palpable error. The Court set forth its reasoning on this matter in full detail in its Order. ECF No. 36 PageID.486–91. Because Defendant has not raised any new argument on this point, there is no need to address it further.

As an additional argument in support of reconsideration of the Court's ruling that emailing the Note was sufficient to give Plaintiff rights, Defendant raises a new ground: that the Michigan Uniform Electronic Transactions Act (UETA), MCLA § 450.833 et seq., which applies to Article 2 of the UCC, does not apply to most of Article 3, the portion of the UCC that covers negotiable instruments. ECF No. 37 PageID.529. On this ground, Defendant extrapolates that *no* electronic transfers are *ever* permissible with respect to *any* other articles of the UCC.

Defendant also tries to claim that even where the UETA allows for certain kinds of "transferable records" to include "a note under article 3 of the uniform commercial code," the issuer of the electronic record must expressly agree that it is a transferable record. M.C.L. § 450.846. ECF No. 37 PageID530.

The Court notes—without deciding the issue—that the record *could* support a finding that Defendant expressly agreed that the Promissory Note which he sent to Plaintiff was intended to be a transferable record. But this point is immaterial at this stage because Defendant never raised this argument when he had the chance to do so. As Plaintiff notes in her response to this motion, a litigant is not permitted to raise new legal arguments in a motion for reconsideration. *Evanston Ins. Co. v. Cogswell Props., LLC*, 683 F.3d 684, 692 (6th Cir. 2012). In addition, at the very least, the

Court's previous order in this case is not "unmistakab[ly]" wrong in light of the UETA argument. *See Fleck v. Titan Tire Group*, 177 F. Supp. 2d 605, 624 (E.D. Mich. 2001) (internal citation omitted). And even if delivery of the Note was insufficient under UETA, the Court has already concluded that it was sufficient under the UCC. For these multitude of reasons, the Court declines to reconsider its prior finding that Plaintiff is a holder of the promissory note and entitled to enforce it.

> e. *Legal Issue II: Basing a Fraud Claim on a Misstatement of Law*

Defendant's final complaint is that the Court improperly denied his motion for summary judgment on the fraudulent misrepresentation count. ECF No. 37 PageID.531. He bases this argument on the principle that a misrepresentation of law—as opposed to fact—cannot form the basis of a fraud claim. Defendant did not raise this argument at any point before his motion for reconsideration, so the Court need not consider it. However, it is correct that Michigan courts have found that, in most circumstances, misrepresentation of the law is not grounds for fraud claims. *See, e.g.*, *Cummins v. Robinson Twp.*, 770 N.W.2d 421, 436 (Mich. Ct. App. 2009). At the same time, Michigan courts have also hedged the universal applicability of this rule. *See Waldorf v. Zinberg*, 307 N.W.2d 749, 753

(Mich. Ct. App. 1981)("It is the general rule that 'fraud cannot be predicated upon misrepresentations as to matters of law.' . . . The writer, however, adds that the rule 'may be rendered inapplicable by the existence of peculiar facts and circumstances'." (quoting *Rosenburg v. Cyrowski*, 198 N.W. 905, 906 (Mich. 1924) (internal quotation marks and ellipses omitted)).

*Cummins* involved parties bargaining at arms-length, while in this case Plaintiff was Defendant's little sister who testified that she trusted him implicitly, both because he was her older brother, and because he was an experienced commercial real estate attorney, and she was not. The rule in *Cummins* might well not apply in light of the facts of this case. But none of this really matters. Defendant failed to raise this argument in his Motion for Summary Judgment and he cannot raise it now. *Evanston*, 683 F.3d at 692.

Moreover, Defendant effectively has won on this issue anyway—Plaintiff voluntarily dismissed the fraud count of her Complaint. It is mystifying why Defendant would seek reconsideration on an aspect of the Court's ruling that is so plainly a moot point.

Defendant's Second Motion for Reconsideration is just a legal formality; it asks the Court to reconsider its judgment issued in Plaintiff's favor. Because the first motion held no merit, the second likewise will be denied.

## V. Conclusion

For the foregoing reasons, Defendants Motions for Reconsideration are **DENIED**.

**SO ORDERED.**

Dated: November 15, 2018

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

## Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on November 15, 2018.

s/A. Chubb
Case Manager